IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 12, 2005

## JOHN R. BLACK, a/k/a RENE J. BLACK v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-A-396    Steve Dozier, Judge**

———————————

**No. M2004-01785-CCA-R3-PC - Filed August 11, 2005**

———————————

Petitioner, John R. Black, a/k/a Rene J. Black, filed a petition for post-conviction relief, as amended, alleging ineffective assistance of counsel at trial and on appeal.  Following an evidentiary hearing, the post-conviction court denied the petition.  On appeal, Petitioner argues that trial counsel's assistance was ineffective (1) for failing to prepare an adequate record for appeal; (2) for failing to request an instruction on the lesser included offense of false imprisonment or raise the trial court's failure to do so on appeal; and (3) for failing to object to the prosecutor's improper questions and comments during Petitioner's cross-examination at trial and during closing argument.  After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Dwight E. Scott, Nashville, Tennessee (on appeal), and Monte Watkins, Nashville, Tennessee (at trial), for the appellant, John R. Black.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; Amy H. Eisenbeck, Assistant District Attorney General; and Rachelle Laisnez, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I.  Background

Following a jury trial, Petitioner was convicted of one count of aggravated kidnapping, two counts of aggravated assault, and one count of assault. Petitioner received an effective sentence of twenty-three years.  The facts surrounding Petitioner's convictions were summarized by this Court

in the direct appeal in *State v. Black*, No. M2000-01286-CCA-R3-CD, 2002 WL 560962 (Tenn. Crim. App., at Nashville, April 16, 2002), *perm. to appeal denied* (Tenn. Oct. 7, 2002) as follows:

It is undisputed that the defendant and Eloise Adams, the victim, had developed a relationship. It is also undisputed that the defendant, who was in his late thirties, had been living with the victim, who was in her mid-sixties, at the Vine Hill high-rise prior to and during the dates involved with the charged offenses. Furthermore, the defendant acknowledges that he hit the victim with an open hand on more than one occasion on Friday, September 25, 1998, because of her alleged involvement with another man. However, the victim's testimony recalls an ordeal lasting for several days during which, among other things, the defendant struck her numerous times with his fist; repeatedly called her derogatory names; raped her; demanded that she change her phone number (which a representative of Bell South confirmed that she did); confined her in the apartment; "ransacked [her] house;" kicked her; and threatened her with a beer bottle. . . . .

The victim testified that she could not have left her apartment after the defendant came home on September the 25th. She explained that at that time the defendant remained in the front of the residence (where the means to exit was located); "was in a rage"; and informed her that she was "not going anywhere." On this evening, the defendant kicked the victim under the chin with his steel-toed shoes causing a wound that required stitches and left a scar. Also during this time he threatened her with a beer bottle, stating, "I should mess up your face so nobody else would want you." Because the victim was afraid that if the defendant struck her with the bottle he would render her unconscious, the victim began working her way toward the door. After she succeeded in running outside screaming for a brief period of time, the defendant caught her, placed his hand over her mouth, and pulled her back into the apartment. Thereafter, a neighbor who had seen and heard this from the housing tower opposite the victim's, called 911 at approximately 2:30 a.m.

*Black*, 2002 WL 560962, at **2-3.

## II. Post-Conviction Hearing

Petitioner's trial counsel testified that he had been in private practice for over nineteen years, primarily in the area of criminal law. Although he described Petitioner as "hostile" and "threatening" prior to trial, trial counsel felt that he was able to adequately communicate with Petitioner. Trial counsel said that he met with Petitioner approximately eleven times prior to trial. He advised Petitioner that he would likely be convicted of all the counts of the indictment except perhaps the aggravated rape charge. Petitioner, however, rejected three offers of settlement from the State, including one offer that was extended during the trial.

Petitioner told trial counsel that Nathan Jones was romantically involved with the victim, and maintained that Mr. Jones caused the victim's injuries. Trial counsel said that he personally served Mr. Jones with a subpoena. When trial counsel interviewed him, Mr. Jones denied the affair and denied that he had been in the victim's apartment during the time period of the offenses. Although Mr. Jones appeared at court, trial counsel ultimately decided not to call Mr. Jones as a witness because his testimony would not have assisted Petitioner's defense.

Trial counsel said that in his motion for new trial he challenged the trial court's ruling granting the State permission to amend the indictment. He conceded, however, that he did not include in the appellate record the transcript of the hearing on the State's request to amend the indictment. Trial counsel said, however, that he believed the trial court's ruling was correct notwithstanding his objections to the State's second motion to amend the indictment.

Trial counsel testified that Petitioner insisted on testifying on his own behalf. Petitioner contended that he was at the Drake Motel during part of the time alleged in the indictment, but there were no records to support his contention. Trial counsel agreed that the record reflected that he did not object to certain questions posed by the State during Petitioner's cross-examination or comments made during closing argument. Trial counsel said that Petitioner raised the subjects of Mr. Jones' presence in the victim's apartment and the victim's injuries during his direct examination.

Trial counsel did not specifically recollect whether he had requested the trial court to charge the jury with false imprisonment as a lesser included offense of aggravated kidnapping.

On cross-examination, trial counsel read into the record a synopsis of Petitioner's case which he prepared after the trial.

> I was appointed to represent Mr. Black, after the Public Defender, Laura Dykes, was forced to withdraw, as a result of threats and accusations made by [Petitioner].

> I met with him a number of times; the last several weeks were in Max Security. Prior to trial the State offered ten years at thirty-five percent, to aggravated assault and kidnapping. He rejected the offer.

> As the trial grew nearer, he was offered eight years at thirty-five percent, which was also rejected. Prior to the start of the trial, I discussed the offer with his mother and sister.

> His mother met with him, and he still rejected the offer. He also rejected an offer, after the first day of trial.

> A big problem with [Petitioner] was . . . understanding how certain information, if brought up at trial, could hurt him. He thought that cell phone records would help him.

Those records indicated that he called the victim's apartment immediately after the [911] call, and continued to call for some time.

He also insisted that Mr. Nathaniel [sic] Jones was necessary for his trial. I met with Mr. Jones, and he stated to me that he was never in the victim's apartment, contrary to Mr. Black's testimony.

He also wanted phone records . . . from the Drake Motel, that did not exist. This was my most difficult trial, because throughout the trial [Petitioner] cursed me, threatened me, would not allow me to listen to witness' testimony, and was constantly disruptive.

At this point, I think it is best that I file a motion to be relieved, because [Petitioner] believes that it is my fault and a conspiracy between the victim, the police, and the District Attorney.

Petitioner testified that he met with his trial counsel approximately two times before trial. Petitioner said he discussed potential witnesses and defense strategy with his trial counsel, and trial counsel told him he did not have anything to worry about. Petitioner said that trial counsel did not tell him that he had interviewed Mr. Jones, and Petitioner was not aware that Mr. Jones was present during the trial. Petitioner denied that his trial counsel told him that the State had offered to settle the charges with a recommended sentence of eight years.

## III. Standard of Review

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *Burns*, 6 S.W.3d at 461.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged

from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## IV. Inadequate Record on Appeal

Petitioner argues that his counsel rendered ineffective assistance of counsel because he failed to provide a complete record on appeal. In his direct appeal, Petitioner argued that the trial court erred in permitting the State to amend the indictment for the second time to change the dates involved in the aggravated kidnapping count from September 21 through 23, 1998, to September 25 and 26, 1998. *See Black*, 2002 WL 560962, at *5. In Petitioner's direct appeal, a panel of this Court found that the record was inadequate to address this issue because the record did not include a transcript of the hearing on the State's second motion to amend and thus considered the issue waived, stating as follows:

> We have no access to the evidence presented in or any specific findings from this hearing. The need for a transcript of the hearing on this motion becomes even more apparent upon reviewing the trial court's findings at the new trial motion hearing. More particularly, at the latter hearing the trial court referred to "a lengthy discussion" that was had on the contested motion to amend the indictment.

*Id.*

It was accordingly presumed "that the trial judge acted correctly and conclude[d] that [Petitioner] is not entitled to relief based upon this issue . . .." *Id.*

The State argues that Petitioner failed to prove that he was prejudiced by trial counsel's omission, contending that even if counsel had included the transcript of the hearing in the appellate record, Petitioner would not have prevailed on the issue. At the post-conviction hearing, trial counsel also expressed the opinion that he believed the trial court's ruling was correct, notwithstanding his challenge to the State's second motion to amend the indictment.

The post-conviction court concluded that Petitioner had not established that he was prejudiced by trial counsel's conduct as required under *Strickland*, stating:

-5-

The second amendment of the indictment amended the dates in count one from September 21-23, 1998 to September 25-26, 1998. A review of the record indicates that the petitioner's previous attorney was aware of these dates after the preliminary hearing. In the petitioner's motion for a bill of particulars, counsel concedes that the victim testified that the [aggravated kidnapping] offense occurred between September 25, 1998 and September 26, 1998. [Trial counsel] testified that he did not acquire a transcript of the hearing as to the amendment because he felt that petitioner would not prevail on this issue. The Court of is the opinion the petitioner and his counsel(s) were aware early on of the dates the petitioner committed these crimes. A variance of a couple of days is not fatal especially since the petitioner's defense was not one of alibi.

Petitioner was indicted on five counts on February 16, 1999. In count one, Petitioner was charged with committing the offense of aggravated kidnapping between September 21, 1998, and September 23, 1998. In count two, Petitioner was charged with committing the offense of aggravated rape on September 22, 1998. In counts three through five, Petitioner was charged with the aggravated assault of the victim on September 25, 1998. In count six, Petitioner was charged with assaulting the victim on September 24, 1998. Petitioner was found not guilty on counts two and three, and guilty on the remaining counts.

At the conclusion of the hearing on the State's second motion to amend the indictment, the following dialog took place:

[THE COURT]:    [R]egardless of what specific dates are in . . . Count One of the indictment, if they come in at trial and present proof and argue to the jury that [the victim] was detained against her will and suffered serious bodily injury on Friday or Saturday of that week . . . would you be adequately prepared to defendant it?

[TRIAL COUNSEL]: Yes, Your Honor.

[THE COURT]:    All right. Because Count One of the indictment alleges that she suffered bodily injury [while] being detained, which . . . at least Counts Three and Four also on the twenty-fifth. . . allege bodily injury. And so, [you've] been aware that — that there's some allegations that – that would have similar elements occurred on at least Friday of that week.

[TRIAL COUNSEL]: That's correct.

Rule 7(b) of the Tennessee Rules of Criminal Procedures states, in part, that "[i]f no additional or different offense is thereby charged and no substantial rights of the defendant are

thereby prejudiced, the court may permit an amendment [to the indictment] without the defendant's consent before jeopardy attaches." The trial court has the discretion to grant or deny a motion to amend the indictment under such circumstances, and this Court will alter the trial court's decision only if that discretion is abused. *State v. Kirkland*, 696 S.W.2d 544, 545 (Tenn. Crim. App. 1985). "This Court has held that the amendment of the date in an indictment does not charge the defendant with a new or an additional crime." *State v. Kennedy*, 10 S.W.3d 280, 284 (Tenn. Crim. App. 1999) (citations omitted); *see also State v. Badgett*, 693 S.W.2d 917, 919 (Tenn. Crim. App. 1985).

Based on the foregoing and our review of the record, we conclude that the evidence does not preponderate against the post-conviction court's finding that, even if trial counsel's conduct was deficient in this regard, Petitioner failed to show that he was prejudiced by the failure of his trial counsel on appeal to include the transcript of the hearing on the State's second motion to amend the indictment.

## V. Lesser Included Offenses

At trial, the trial court instructed the jury on kidnapping as a lesser included offense of the charged offense of aggravated kidnapping. Petitioner argues that his trial counsel rendered ineffective assistance of counsel because he did not request an instruction on false imprisonment as a lesser included offense of aggravated kidnapping.

Petitioner was convicted of aggravated kidnapping which is defined as false imprisonment where, as applicable here, the victim suffers bodily injury. *See* Tenn. Code Ann. § 39-13-304(a)(4). The offense of false imprisonment is thus incorporated into the statutory definition of aggravated kidnapping, and is, therefore, a lesser included offense of aggravated kidnapping under part (a) of the test set forth in *State v. Burns*, 6 S.W.3d 453, 466 (Tenn. 1999)(An offense is a lesser included offense of another if all of its statutory elements are included within the statutory elements of the charged offense).

Nonetheless, at the time of Petitioner's trial, it was "[t]he trial court's duty to charge juries as to the law of each offense included in an indictment . . . whether or not a defendant requests such an instruction." *State v. Wilson*, 92 S.W.3d 391, 394 (Tenn. 2002) (citing Tenn. Code Ann. § 40-18-110(c) (1997)). Based on the trial court's duty to instruct the jury regardless of a request to do so from the defendant, this Court has previously found that defense counsel's conduct was not deficient for failing to request an instruction on a particular lesser included offense. *See Jeffery Lee Miller v. State*, No. M2003-02841-CCA-R3-PC, 2005 WL 901130, at *5 (Tenn. Crim. App., at Nashville, Apr. 19, 2005), application for perm. to appeal filed; *Terrance L. Turner v. State*, No. M2002-02429-CCA-RR3-PC, 2004 WL 587636, at *5 (Tenn. Crim. App., at Nashville, Mar. 25, 2004)*, perm. to appeal denied* (Tenn. August 30, 2004). Accordingly, we conclude in the case *sub judice* that trial counsel was not deficient for failing to request an instruction on false imprisonment as a lesser included offense of aggravated kidnapping.

Moreover, in *State v. Williams*, 977 S.W.2d 101 (Tenn. 1998), our Supreme Court concluded that "by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, . . . the jury necessarily rejected all other lesser included offenses . . .." *Id.* at 106. The trial court instructed the jury on kidnapping as a lesser included offense of aggravated kidnapping, the charged offense. "Kidnapping" is defined as "false imprisonment under circumstances exposing the other person to substantial risk of bodily injury." Tenn. Code Ann. § 39-13-303(a)(1). The element elevating the offense of kidnapping to aggravated is the actual infliction of bodily injury upon the victim. *Compare id.* §§ 39-13-304(a)(4) *with* 39-13-303(a)(1). By rejecting the lesser included offense of kidnapping, the jury clearly demonstrated that it would not have returned a verdict on false imprisonment. *See Williams*, 977 S.W.2d at 106. Thus, Petitioner has failed to show that he was prejudiced by any omission on the part of trial counsel to request an instruction on the offense of false imprisonment.

Petitioner also argues for the first time in his brief that trial counsel's assistance was ineffective because he failed to raise on appeal the trial court's failure to charge false imprisonment as a lesser included offense of aggravated kidnapping. This specific issue was not raised in Petitioner's *pro se* petition for post-conviction relief, or the subsequent amendment to the petition, and was not raised during the post-conviction hearing. Issues not raised in the post-conviction petition may not be raised for the first time on appeal. *See* Tenn. Code Ann. § 40-30-104(d); *Cone v. State*, 747 S.W.2d 353, 356 (Tenn. Crim. App. 1987). Thus, Petitioner is not entitled to relief on this issue.

## VI. Failure to Object

Petitioner argues that his trial counsel's assistance was ineffective because he failed to object to one of the prosecutor's questions to Petitioner on cross-examination and to a comment made during the prosecutor's closing argument. In the first instance, the prosecutor asked on cross-examination, "So, can you explain why Nathan isn't here?" Petitioner also challenges the prosecutor's comment during closing argument that "[Petitioner] can't explain why there is still blood dripping from underneath [the victim's] chin at three o'clock in the morning on the 26th." Petitioner argues that his trial counsel should have objected because the comments impermissibly shifted the burden of proof to Petitioner.

At the post-conviction hearing, trial counsel said that he did not specifically remember the prosecutor asking Petitioner why he could not explain Mr. Jones' absence from trial, and agreed that the question appeared to shift the burden of proof to Petitioner. Trial counsel stated, however, that the subject matter of the prosecutor's question and comment "probably came up in [Petitioner's] testimony at some point." The post-conviction court found that Petitioner had not presented any proof on this issue and thus had not sustained his burden of proving the factual allegations by clear and convincing evidence.

At the post-conviction hearing and on appeal, Petitioner has attached as an exhibit the page of the trial transcript upon when the challenged comments are reflected. The State argues that the

comments are taken out of context, and the exhibits submitted by Petitioner do not fairly or accurately portray what occurred in the trial court with respect to these issues. Alternatively, the State argues that both the question posed during cross-examination and the prosecutor's comment during closing argument were properly based on the evidence and did not shift the burden of proof to Petitioner.

Although the State phrases the argument in its brief in terms of an inadequate appellate record, the adequacy of the exhibits submitted at the post-conviction hearing speaks more to the sufficiency of the evidence presented in support of Petitioner's claim for post-conviction relief. Under our statutory scheme, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). "Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

During Petitioner's cross examination at trial, the following exchange occurred:

[STATE]:          So, [Mr. Jones] should have been here, right?

[PETITIONER]:     That's what I said. Uh–that's exactly my sentiments are [sic] today.

[STATE]:          So, can you explain why [Mr. Jones] isn't here?

[PETITIONER]:     No, ma'am. I asked my lawyer the same thing. And, I was getting upset about that.

[STATE]:          Okay. So is your lawyer incompetent? Is that what you're trying to say?

[PETITIONER]:     Uh–well, I kind of wondered why–uh–[Mr. Jones] wasn't here when he was on the scene of this accident. That kind of . . . yeah, yeah. Uh–I told 'em [sic] about that, yeah.

Petitioner's theory of defense at trial apparently rested upon his allegation that Mr. Jones was in the victim's apartment at some point on September 25, and that Mr. Jones caused the victim's injuries.

Along these lines, the prosecutor stated during closing argument,

The first officer to arrive on the scene testified that there was blood dripping from her chin. [Petitioner], of course, says that this happened at two o'clock in the afternoon on Friday when the phantom man, [Mr. Jones], knocked her over a coffee table.

And, [Petitioner] can't explain why there is still blood dripping from underneath her chin at three o'clock in the morning on the 26th.

These comments did not impermissibly shift the burden of proof to Petitioner. Based upon the context in which this issue was presented, the prosecutor's questions during cross-examination and the remarks during closing argument challenge Petitioner's credibility and theories regarding how the victim was injured on the dates of the offenses. Based upon our review of the record, we conclude that the evidence does not preponderate against the post-conviction court's findings that Petitioner failed to prove by clear and convincing evidence that his trial counsel's failure to object to the challenged question reflected ineffective assistance of counsel. Defendant is not entitled to relief on this issue.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE